UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| DERWIN SIMS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   No. 4:25-CV-01165 HEA |
| | ) |
| UNITED STATES DEPT. OF | ) |
| HOUSING AND URBAN | ) |
| DEVELOPMENT, | ) |
| | ) |
| Defendant. | ) |

### OPINION, MEMORANDUM AND ORDER

This matter is before the Court on self-represented plaintiff Derwin Sims'[1] motion to proceed in forma pauperis. [ECF No. 2]. The Court finds that plaintiff lacks sufficient funds to pay the filing fee and will grant the motion. Additionally, for the following reasons, the Court will dismiss plaintiff's complaint on initial review pursuant to 28 U.S.C. § 1915(e)(2)(B). Plaintiff's motion for restraining order will be denied without prejudice. [ECF No. 3].

**Legal Standard on Initial Review**

Under 28 U.S.C. § 1915(e)(2), the Court must dismiss a complaint filed without payment of the filing fee if it is frivolous, malicious, or fails to state a claim upon which relief can be granted. To state a claim, a plaintiff must demonstrate a plausible claim for relief, which is more

---

[1] Plaintiff Derwin Sims and his sister, Iris Watson, filed a joint complaint in this action. Although each of the plaintiffs signed the pro se complaint, only plaintiff Sims moved to proceed in forma pauperis in this matter. Because plaintiff Watson neither filed a motion to proceed in forma pauperis nor paid the $400 filing fee, and plaintiff Sims, as a pro se litigant, cannot represent his sister, the Court must strike plaintiff Watson from this action. *See* 28 U.S.C. § 1654 (stating that in all United States courts, "the parties may plead and conduct their own cases personally or by counsel"); *Iannaccone v. Law*, 142 F.3d 553, 558 (2d Cir. 1998) (stating that "because pro se means to appear for one's self, a person may not appear on another's behalf in the other's cause. A person must be litigating an interest personal to him."); *Lewis v. Lenc–Smith Mfg. Co.,* 784 F.2d 829, 830 (7th Cir. 1986) (stating that non-lawyers may only represent themselves because "an individual may appear in the federal courts only pro se or through counsel.").

than a "mere possibility of misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw upon judicial experience and common sense. *Id.* at 679. The court must "accept as true the facts alleged, but not legal conclusions or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Barton v. Taber*, 820 F.3d 958, 964 (8th Cir. 2016); *see also Brown v. Green Tree Servicing LLC*, 820 F.3d 371, 372-73 (8th Cir. 2016) (stating that the court must accept factual allegations in complaint as true but is not required to "accept as true any legal conclusion couched as a factual allegation").

## Background and Complaint

This is a suit to enjoin the foreclosure of a house located at 8339 Seville Avenue, University City, Missouri. At an unstated point in time, plaintiff's mother, Tenobia Page (decedent), obtained a reverse mortgage on the property allowing her to borrow an undisclosed principal amount. Generally, the reverse mortgage taken by decedent was made up of a note, a deed of trust and a loan agreement. Plaintiff has not indicated who the note, deed of trust and loan agreement were entered into with, as it appears he does not have a copy of these documents. Undeniably, several pertinent facts are missing from the present lawsuit. Before delving into the facts, the Court will provide a background into reverse mortgages that are insured by the United States Department of Housing and Urban Development (HUD).

A reverse mortgage is "a form of equity release in which a mortgage lender (typically a bank) makes payment to a borrower based on the borrower's accumulated equity in his or her home." *Bennett v. Donovan*, 703 F.3d 582, 584 (D.C. Cir. 2013). Unlike a traditional mortgage, in

which the borrower receives a lump sum and steadily repays the balance over time, the borrower in a reverse mortgage receives periodic payments (or a lump sum) and need not repay the outstanding balance until certain triggering events occur, like the death of the borrow or the sale of the home.² *Id.* at 584-585. Likewise, repayment may be triggered when the mortgagor fails to comply with an obligation and the Secretary of (HUD) approves of requiring immediate payment in full. *See* 24 C.F.R. 206.27(c)(2)(iii).

Reverse mortgages are typically non-recourse loans, so if a borrower does not repay the loan or if the proceeds obtained from the home's sale do not cover the loan's outstanding balance, the lender has no recourse as to the borrower's remaining assets. *Id.* "This feature is, of course, favorable to borrowers but introduces significant risk for lenders – if regular disbursements are chosen, they can continue until the death of the borrower (like a life annuity), and the loan balance will increase over time, making it less and less likely that the borrower will be able to cover the full amount. If a borrower lives substantially longer than expected, lenders could face a major loss." *Id.*

Congress was concerned that "this risk was deterring lenders from offering reverse mortgages" and passed the Housing and Community Development Act of 1987 (HCDA) which "authorized HUD to administer a mortgage-insurance program, which would provide assurance to lenders that, if certain conditions were met, HUD would provide compensation for any outstanding balance not repaid by the borrower or covered by the sale of the home." *Id.*

The HCDA, codified in its entirety in Section 255 of the National Housing Act at 12 U.S.C. § 1715z-20, implements the federal government program for providing optional insurance to

---

²It is customary for reverse mortgage contracts to include language "requir[ing] immediate payment-in-full of all sums secured by this Security instrument" if, among other things, "[a] Borrower dies and the Property is not the principal residence of at least once surviving Borrower...." *See, e.g., Estate of Jones v. Live Well Financial, Inc.*, No. 1:17-CV-3105-TWT, 2017 WL 4176661, *2 (N.D. Ga. 2017).

-3-

lenders of qualifying reverse mortgages. HCDA has two primary purposes: (1) "to meet the special needs of elderly homeowners by reducing the effect of the economic hardship caused by the increasing costs of meeting health, housing, and subsistence needs at a time of reduced income, through the insurance of home equity conversion mortgages to permit the conversion of a portion of accumulated home equity into liquid assets"; and (2) "to encourage and increase the involvement of mortgagees and participants in the mortgage markets in the making and servicing of home equity conversion mortgages for elderly homeowners." 12 U.S.C. § 1715z-20(a).

The only reverse mortgage insured by the U.S. Government is called a Home Equity Conversion Mortgage (HECM) and is available through an FHA-approved lender. *Id.* An HECM enables the borrower to withdraw a portion of the home's equity. The amount that will be available for withdrawal varies by borrower and depends on several factors. *See* 12 U.S.C. § 1715z-20 (governing HUD's insurance of HECM for elderly homeowners); 12 U.S.C. § 1715z-20 (b)(3) (defining a HECM); § 1715z-20(d) (listing the eligibility requirements); 24 C.F.R. § 206 (regulations governing the HECM).

*HUD does not itself contract for reverse mortgages*. Instead, HUD has authority to insure reverse mortgages that are independently contracted between homeowners and private lenders if certain requirements are satisfied. *See* 12 U.S.C. § 1715z-20(c) ("The Secretary may, upon application by a mortgagee, insure any home equity conversion mortgage eligible for insurance under this section"). The statute delineates, *inter alia*, a long list of particularized requirements for reverse mortgages to be eligible for HUD insurance and requires the Secretary of HUD to ensure that the mortgagee of each insured mortgage makes certain disclosures to the homeowner and provides adequate counseling for the mortgagor. 12 U.S.C. § 1715z-20(d)-(f).

-4-

As noted above, under the program, HUD "insures reverse mortgages originated by private lenders." *Johnson v. World All. Fin. Corp.,* 830 F.3d 192, 195–96, n. 2 (5th Cir. 2016); *see also* 12 U.S.C. § 1715z-20(b)(3). This means that HUD provides the borrower any funds that the private lender is obligated to pay but for some reason does not. 12 U.S.C. § 1715z-20(i); 24 C.F.R. §§ 206.117, 206.121(a). To implement this program, two deeds of trust are usually issued and recorded reflecting two mortgages. *See, e.g.,* 24 C.F.R. §§ 206.27, 206.117, 206.121. The private lender originates the loan through a First Note and secures that note in a First Deed of Trust (the first mortgage). 12 U.S.C. § 1715z-20. The borrower executes a Second Note and secures that note in a Second Deed of Trust (the second mortgage). *See, e.g.,* 24 C.F.R. §§ 206.27(d), 206.121(c). The second mortgage becomes relevant if HUD makes payments instead of the private lender. *Id.* § 206.121(c). To protect the private lender, the HECM program lets the lender transfer the First Note and First Deed of Trust to HUD before repayment from the borrower but only when the borrower's indebtedness reaches 98% of the maximum loan. *Id.* §§ 206.107(a), 206.123(a).

As is customary with reverse mortgages, decedent Tenobia Page, allegedly pledged the property in University City as collateral for repayment of the note. However, the Court is unsure of when this occurred, as this is not noted in the complaint. Decedent passed away on March 7, 2023. Plaintiff asserts that as part of decedent's estate, Ms. Page deeded the property by beneficiary deed, *see* Mo. Rev. Stat. § 461.025, to he and his sister, Iris Watson, as tenants in common.[3] It is unclear if plaintiff and Ms. Watson notified the St. Louis County Recorder of deeds of the death of Ms. Page and/or subsequently transferred ownership of the University City property after Ms. Page's death. Herein may lie the confusion in this case.

---

[3] Plaintiff Sims has attached a beneficiary deed to his motion for restraining order and it appears that the beneficiary deed was filed with the St. Louis County recorder of deed on January 3, 1998.

Plaintiff asserts that "despite the valid transfer, HUD initiated foreclosure proceedings due to a reverse mortgage loan on the property, without providing plaintiff[] with proper notice or a final payoff demand." Plaintiff, however, has not provided any information as to when foreclosure proceedings were initiated, whether these foreclosure proceedings are still ongoing, if they have been halted, or even the entity who is attempting the foreclosure proceedings.

It is unclear when or how plaintiff Sims found out about the reverse mortgage on the University City property. In his complaint he asserts that his sister, Ms. Watson, attempted to contact HUD shortly after Ms. Page's death in 2023. Ms. Watson's affidavit attached to the restraining order states that she had been living with and caring for her mother for approximately fifteen years, and that she attempted to contact HUD on multiple occasions after her mother's death. She does not indicate why she attempted to contact HUD or how she knew to do so. She claims, however, that HUD did not acknowledge the change in ownership for approximately three months.

Ms. Watson claims that "HUD later promised to order an appraisal," but she fails to indicate who her correspondence was with, *i.e.,* was it with HUD or one of its contractors? She asserts that "eventually, HUD moved forward with pre-foreclosure without any notice." According to emails attached to both the complaint and the restraining order,[4] the request for payment on the reverse mortgage came from Compu-Link, an HECM servicer.[5] Plaintiff has not produced

---

[4]Margaret Moore, Cash Accounting Specialist from Compu-Link Corporation, apparently sent an email to plaintiff on July 23, 2025, along with a request for payment on the reverse mortgage. The request for payment includes a "payoff" balance of $122,812.73 for the University City property.

[5]HUD's website states that Compu-Link Corporation is responsible for servicing all HECMs and HECM subordinate mortgages. And indeed, plaintiff has produced exhibits attached to his complaint of correspondence with a Compu-Link representative. What is unclear, however, is whether Compu-Link currently holds decedent's reverse mortgage or if they are simply the servicer of the mortgage on behalf of HUD.

evidence that any correspondence to him in this case came from HUD, the actual defendant in this action. Additionally, plaintiff has not produced any documentation indicating that Compu-Link or HUD is pursuing foreclosure of the property at this time except *his own email* to a Compu-Link employee, dated July 20, 2025, seeking a ninety (90) day extension of time to "explore viable resolution options. . ." In the email to Ms. Moore, the Compu-Link employee, plaintiff argues that the 2024 appraisal of the University City home, shows a value of only $86,000 and as such, the debt balance is "no more than 95% of the market value." Plaintiff tells Moore that he is actively seeking refinancing options which could satisfy the debt obligation and prevent foreclosure. Plaintiff Sims has not indicated what the response was to his email from Compu-Link employee Moore.

Plaintiff Sims brings several claims in the complaint. He first states, as noted above, that the foreclosure proceedings brought by HUD, should be stopped, because he did not receive proper notice of default or the final payoff demand. But as the Court has previously explained, the complaint lacks numerous facts, such as when the reverse mortgage was entered, who it was with, when plaintiff became aware of the reverse mortgage, when he was aware that HUD or Compu-Link was attempting to collect on the debt, and when he first received a demand for payment from the mortgage holder.

Plaintiff also brings claims on behalf of his mother's estate. He asserts that Ms. Page lacked capacity to contract for the reverse mortgage, because she was diagnosed with dementia and/or Alzheimer's Disease in 2013 or 2014. Again, the Court lacks the date of when the reverse mortgage was entered into by Ms. Page. Plaintiff additionally claims that Ms. Page may not have received proper counseling to enter the reverse mortgage contract. Plaintiff, however, has not shown that he has standing to bring claims on behalf of the estate. *See* Fed. R. Civ. P. 17. And even if he did,

the Court again reminds plaintiff that there are no allegations that the contract Ms. Page entered was with HUD.[6]

Last, plaintiff seeks to quiet title[7] to the property by alleging a violation of his due process rights. Namely, he seeks a declaration from this Court that he and his sister are the rightful owners of the University City property and that HUD's attempts at foreclosure and failure to properly notify them of their rights are an unlawful taking. He seeks to enjoin HUD from foreclosure or eviction, as well as a declaration that "no valid debt or mortgage obligation [from Ms. Page's contractual obligations] remains enforceable." Plaintiff additionally seeks a declaration that the reverse mortgage contract is void and unenforceable.

## Discussion

Plaintiff Derwin Sims seeks a judgment from this Court and to quiet title against the United States Department of Housing and Urban Development based on the alleged anticipated foreclosure of his inherited property. Plaintiff's claims against HUD must be dismissed based on the doctrine of sovereign immunity.

"Generally, sovereign immunity prevents the United States from being sued without its consent." *Iverson v. United States*, 973 F.3d 843, 846 (8th Cir. 2020); *see also Hinsley v. Standing Rock Child Protective Servs.* 516 F.3d 668, 671 (8th Cir. 2008) (stating that "[i]t is well settled that the United States may not be sued without its consent") and *Fed. Deposit Ins. Co. v. Meyer*,

---

[6]Furthermore, to the extent plaintiff's claims are premised on 12 U.S.C.§ 1715z-20, they are subject to dismissal because there is no private right of action under the HECM statute and therefore sovereign immunity is not waived. *See Estate of Leventhal ex rel. Bernstein v. Wells Fargo Bank, N.A.,* No. 14 CIV. 8751 ER, 2015 WL 5660945, at *12 (S.D.N.Y. Sept. 25, 2015) (collecting cases finding no private right of action for violation of § 1715z); *see also Johnson v. World All. Fin. Corp.,* 830 F.3d 192, 196 (5th Cir. 2016) ("HUD regulations govern the relationship between the reverse-mortgage lender and HUD as insurer of the loan.").

[7]A quiet title action is a lawsuit brought to clear a party's title to real property.

510 U.S. 471, 475 (1994) (noting that, "[a]bsent a waiver, sovereign immunity shields the Federal Government and its agencies from suit"). To sue the United States or one of its Departments, a plaintiff must show a waiver of sovereign immunity. *See V S Ltd. P'ship v. Dep't of Housing and Urban Dev.*, 235 F.3d 1109, 1112 (8th Cir. 2000). Such a waiver must be unequivocally expressed and cannot be implied. *See College Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 682 (1999). Plaintiff has not shown any waiver of sovereign immunity, and therefore his claims against the HUD will be dismissed.

Federal Rule of Civil Procedure 8(a) requires that the grounds for the court's jurisdiction be stated in the complaint. A party suing the United States, its agencies or officers must identify in its complaint a specific statute containing a waiver of the government's immunity from suit. Plaintiff's complaint fails to identify the statute waiving the government's sovereign immunity. And this Court has not found that such a waiver exists based on the claims before it. Additionally, as noted in detail above, plaintiff's complaint is devoid of essential facts which would allow this Court to provide plaintiff the relief he seeks. There is no evidence that HUD entered the contract with Ms. Page. HUD insures the private lender, but there is no indication that HUD *was* the private lender Ms. Page entered into the contract with. And plaintiff has failed to provide facts relating to the purported foreclosure, such as when it is alleged to be occurring, what entity is involved in the process, if his request for more time was adhered to or if his attempts to refinance have been successful.

For these reasons, plaintiff's complaint will be dismissed on initial review for failure to state a claim upon which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B).

**Motion for Restraining Order**

Plaintiff Sims' motion for temporary restraining order seeks to "enjoin[] HUD and its agents from any foreclosure, appraisal, or sale activities concerning the property at 8339 Seville Avenue, University City, Missouri, during the pendency of this action. . ."

The Court notes that plaintiff's motion was submitted without adequately giving notice to defendant under Federal Rule of Civil Procedure 65(b)(1). Federal Rule 65(b)(1) states:

> The court may issue a temporary restraining order without written or oral notice to the adverse party or its attorneys only if:
>
> (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition, and
>
> (B) the movant's attorney certifies in writing any efforts made to give the notice and the reasons why it should not be required.

(emphasis added).

An injunction is an extraordinary remedy never awarded as of right. *Winter v. Nat. Res. Def. Council, Inc.,* 555 U.S. 7, 27 (2008). In determining whether to grant a temporary restraining order or a preliminary injunction, a district court applies "a flexible consideration of (1) the threat of irreparable harm to the moving party; (2) balancing this harm with any injury an injunction would inflict on other interested parties; (3) the probability that the moving party would succeed on the merits; and (4) the effect on the public interest." *St. Louis Effort for AIDS v. Huff*, 782 F.3d 1016, 1021 (8th Cir. 2015); *see also Dataphase Systems, Inc. v. C L Systems, Inc.*, 640 F.2d 109, 113 (8th Cir. 1981). "None of these factors by itself is determinative; rather, in each case the four factors must be balanced to determine whether they tilt toward or away from granting a preliminary injunction." *West Pub. Co. v. Mead Data Cent., Inc.,* 799 F.2d 1219, 1222 (8th Cir. 1986).

Plaintiff Sims' complaint is unverified, and as noted above, he is unrepresented. Therefore, it is inappropriate, at this time, to hear this matter *ex parte*, or without all parties involved. Additionally, as set forth above, the defendant is entitled to sovereign immunity in this action. Furthermore, the lack of factual information in the complaint indicating that the reverse mortgage was actually entered into with HUD and that HUD is in fact initiating a foreclosure at this time is fatal to both the request for relief in the complaint and in the restraining order. For these reasons, the motion for temporary restraining order will be denied.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff Derwin Sims' application to proceed in the district court without prepaying fees and costs [ECF No. 2] is **GRANTED**.

**IT IS FURTHER ORDERED** that plaintiff Iris Watson is **STRICKEN** from this action as she has neither filed a motion to proceed in forma pauperis or pay the $400 filing fee.

**IT IS FURTHER ORDERED** that plaintiff Derwin Sims' complaint is **DISMISSED without prejudice**.

**IT IS FURTHER ORDERED** that plaintiff Sims' motion for restraining order [ECF No. 3] is **DENIED without prejudice**.

An Order of Dismissal will accompany this Opinion, Memorandum and Order.

Dated this 8th day of August, 2025.

_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE